No. 110,292

In the Matter of ANN GOTTBERG SODERBERG, *Respondent*.

(316 P.3d 762)

Opinion filed January 24, 2014.

*Alexander M. Walczak*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with him on the formal complaint for the petitioner.

*Michael J. Studtmann*, of The Law Offices of Michael J. Studtmann, P.A., of Wichita, argued the cause, and *Ann Gottberg Soderberg*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Ann Gottberg Soderberg, of Wichita, an attorney admitted to the practice of law in Kansas in 1992.

On January 16, 2013, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC) and filed a supplement to the formal complaint on March 1, 2013. On March 14, 2013, the office of the Disciplinary Administrator filed a second formal complaint alleging violations of the KRPC. The respondent untimely filed an answer the day before the hearing on this matter on June 17, 2013. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on June 18, 2013.

The hearing panel determined that respondent violated KRPC 1.3 (2013 Kan. Ct. R. Annot. 464) (diligence); 1.4(a) (2013 Kan. Ct. R. Annot. 484) (communication); 1.16(d) (2013 Kan. Ct. R. Annot. 569) (termination of representation); 3.2 (2013 Kan. Ct. R. Annot. 587) (expediting litigation); 3.3(a)(1) (2013 Kan. Ct. R. Annot. 594) (candor toward tribunal); 8.1(b) (2013 Kan. Ct. R. Annot. 646) (failure to respond to lawful demand for information from disciplinary authority); Kansas Supreme Court Rules 207(b) (2013 Kan. Ct. R. Annot. 336) (failure to cooperate in disciplinary inves-

tigation); and 211(b) (2013 Kan. Ct. R. Annot. 356) (failure to file answer in disciplinary proceeding).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

## "FINDINGS OF FACT

. . . .

## "DA11304

"13.  In April, 2009, L.B.W. retained the respondent to represent him in a pending divorce proceeding in the Sedgwick County District Court. On August 26, 2009, the respondent filed a motion for enforcement of the journal entry and decree of divorce and other relief. After the court granted the respondent's motion, in September, 2009, the court directed the respondent to prepare a journal entry memorializing the decision. The respondent failed to prepare the journal entry.

"14.  In March, 2010, the respondent filed a motion for sanctions against L.B.W.'s former wife for violating the court's orders from September, 2009, on behalf of L.B.W.

"15.  In April, 2010, the court took up the respondent's motion and again ruled in favor of the respondent's client, L.B.W. Again, the court directed the respondent to prepare an order memorializing the court's ruling. The respondent failed to prepare an order memorializing the court's ruling.

"16.  Throughout the period of representation, L.B.W. contacted the respondent for information. The respondent failed to return L.B.W.'s telephone calls and failed to respond to L.B.W.'s electronic mail messages.

"17.  In January, 2011, the respondent left her employment with Lambdin, Soderberg & Lambdin.

"18.  On January 24, 2011, the respondent wrote to L.B.W. and agreed to complete the order memorializing the September, 2009, hearing. The respondent, however, failed to prepare an order.

"19.  On January 31, 2011, the court held another hearing. During the hearing, the respondent advised the court that she did not prepare the order because her client, L.B.W., instructed her not to prepare such an order. [Footnote: L.B.W. denies that he refused to authorize the respondent to prepare and file the order which the court ordered the respondent to prepare. L.B.W. wished to have the respondent prepare the orders.] During that hearing, the court ordered the respondent to file the order from the September, 2009, hearing within one week. Again, the respondent failed to prepare the order.

"20.  On February 22, 2011, Donald E. Lambdin, the respondent's former law partner, wrote to the respondent asking her to prepare the journal entry and informing her that L.B.W. wished to have the journal entry filed. The respondent never prepared the order.

"21. On February 23, 2011, the court held another hearing. During that hearing, the court granted judgment against L.B.W. in the amount of $450, for the expenses associated with the preparation of the order by opposing counsel.

"22. On March 1, 2011, L.B.W. wrote to the respondent and informed her that he expected the respondent to reimburse L.B.W. for the $450 sanction. To date, the respondent has not reimbursed L.B.W. the $450 which L.B.W. paid to have the order prepared by opposing counsel.

"23. In March, 2011, L.B.W. filed a complaint against the respondent. On March 28, 2011, the disciplinary administrator docketed the complaint and directed the respondent to provide a written response to the complaint filed by L.B.W. within 20 days. The respondent failed to provide a written response to the complaint filed by L.B.W. as directed by the disciplinary administrator.

"24. On April 8, 2011, and on April 22, 2011, Ronald Badger, the attorney investigator appointed to investigate the complaint filed by L.B.W., wrote to the respondent directing her to provide a written response to L.B.W.'s written complaint. The respondent did not provide Mr. Badger with a written response to L.B.W.'s complaint.

## "DA11724

"25. In 1996, the respondent represented L.W. in an action in divorce from D.W. The court entered a journal entry of judgment and decree of divorce on July 24, 1997.

"26. L.W. had accrued retirement benefits with Raytheon Aircraft Company. Under the journal entry of judgment and decree of divorce, D.W. was awarded one-half of L.W.'s retirement benefits. The court ordered the respondent to prepare the qualified domestic relations order (hereinafter 'QDRO') to accomplish the division of the retirement account.

"27. The respondent prepared a QDRO. On November 12, 1997, the respondent filed the QDRO. However, the QDRO did not meet the requirements of the plan administrator at the Raytheon Aircraft Company. On February 20, 1998, Pamela E. Bailey, staff counsel with Raytheon Aircraft Company wrote to the respondent and explained how the QDRO failed to meet the requirements and also provided the respondent with suggested language to cure the deficiencies in the QRDO. The respondent took no action to cure the deficiencies of the QDRO.

"28. It appears that neither L.W. nor D.W. were aware that the respondent failed to prepare and file a proper QDRO.

"29. On August 22, 2000, the respondent withdrew from her representation of L.W. without having cured the problems with the QDRO.

"30. In May, 2012, D.W. attempted to claim his share of L.W.'s retirement benefits. At that time, D.W. learned from a representative of Raytheon Aircraft Company that the QDRO was deficient, that the respondent had been informed of the deficiencies, that the respondent failed to take any steps to correct the

deficiencies, and that D.W. would be unable to access his portion of the retirement benefits until the QDRO was corrected.

"31.  D.W. repeatedly contacted the respondent by telephone and by electronic mail, requesting that the respondent correct the QDRO. In November 2012, the respondent responded to D.W., stating that she would review the matter the following week and get back in touch with D.W. The respondent did not correct the QDRO and never contacted D.W.

"32.  As a result of the deficient QDRO prepared by the respondent, neither L.W. nor D.W. have received their respective shares of L.W.'s retirement benefits.

"33.  On December 13, 2012, D.W. filed a complaint against the respondent with the disciplinary administrator. On December 20, 2012, the disciplinary administrator docketed the complaint for investigation. At that time, the disciplinary administrator directed the respondent to provide a written response to D.W.'s complaint within 20 days. The respondent failed to provide a written response to D.W.'s complaint within 20 days as directed.

"34.  Jeffrey D. Leonard was appointed to investigate D.W.'s complaint against the respondent. Mr. Leonard repeatedly contacted the respondent, directing her to provide a written response to the complaint filed by D.W. The respondent never provided Mr. Leonard with a written response to D.W.'s complaint.

"35.  On January 16, 2013, Mr. Walczak filed the formal complaint in DA11304. The respondent did not file an answer to the formal complaint until June 17, 2013, the day before the hearing on the formal complaint.

"36.  On March 1, 2013, Mr. Walczak filed a supplement to the formal complaint in DA11304. The respondent did not file an answer to the supplement to the formal complaint in DA11304.

"37.  On March 14, 2013, Mr. Walczak filed the formal complaint in DA11724. The respondent did not file an answer to the formal complaint until June 17, 2013, the day before the hearing on the formal complaint.

"38.  Also on June 17, 2013, the respondent filed a proposed probation plan and a proposed monitoring agreement.

### "Conclusions of Law

"39.  Based upon the respondent's stipulations and the above findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.3, KRPC 1.4, KRPC 1.16, KRPC 3.2, KRPC 3.3, KRPC 8.1, Kan. Sup. Ct. R. 207, and Kan. Sup. Ct. R. 211, as detailed below.

### "KRPC 1.3

"40.  Attorneys must act with reasonable diligence and promptness in representing their clients. See KRPC 1.3. The respondent failed to diligently and promptly represent L.B.W. and L.W. Specifically, the respondent failed for a period of years to prepare orders memorializing the court's order on behalf of L.B.W. Further, the respondent failed to properly prepare and file a QDRO on behalf of L.W. Because the respondent failed to act with reasonable diligence and

promptness in representing her clients, the hearing panel concludes that the respondent violated KRPC 1.3.

## "KRPC 1.4

"41.   KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' *Id.* In this case, the respondent violated KRPC 1.4(a) when she failed to return L.B.W.'s telephone calls and respond to L.B.W.'s electronic mail messages. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a).

## "KRPC 1.16

"42.   KRPC 1.16 requires lawyers to take certain steps to protect clients after the representation has been terminated. Specifically, KRPC 1.16(d) provides the requirement in this regard:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

The respondent violated KRPC 1.16(d) when she failed to correct the deficiencies of the QDRO she prepared on behalf of L.W. prior to withdrawing from the representation. The hearing panel concludes that the respondent violated KRPC 1.16(d).

## "KRPC 3.2

"43.   An attorney violates KRPC 3.2 if she fails to make reasonable efforts to expedite litigation consistent with the interests of her client. The respondent caused unnecessary delay in L.B.W.'s case when she failed to prepare an order memorializing the court's orders. Accordingly, the hearing panel concludes that the respondent violated KRPC 3.2.

## "KRPC 3.3

"44.   KRPC 3.3(a)(1) provides that '[a] lawyer shall not knowingly make a false statement of material fact or law to a tribunal.' The respondent made a false statement of material fact to the court when she informed the court that she had failed to prepare the order in L.B.W.'s case because L.B.W. instructed her to not do so. At the time the respondent made the statement, she knew the statement to be false. Because the respondent made a false statement to the court, the hearing panel concludes that the respondent violated KRPC 3.3(a)(1).

## "KRPC 8.1 and Kan. Sup. Ct. R. 207(b)

"45.   Lawyers must cooperate in disciplinary investigations. KRPC 8.1(b) and

Kan. Sup. Ct. R. 207(b) provide the requirements in this regard. '[A] lawyer in connection with a . . . disciplinary matter, shall not: . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority, . . .' KRPC 8.1(b).

> 'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.'

Kan. Sup. Ct. R. 207(b). The respondent knew that she was required to forward written responses to the initial complaints because she had been repeatedly instructed to do so in writing by the disciplinary administrator and the attorneys appointed to investigate the complaints. Because the respondent knowingly failed to provide written responses to the initial complaints filed by L.B.W. and D.W., the hearing panel concludes that the respondent violated KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b).

## "Kan. Sup. Ct. R. 211(b)

"46.    The Kansas Supreme Court Rules require attorneys to file answers to formal complaints. Kan. Sup. Ct. R. 211(b) provides the requirements:

> 'The respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.'

Kan. Sup. Ct. R. 211(b). Thus, under Kan. Sup. Ct. R. 211(b), the respondent's answer to each formal complaint was due 20 days after the filing of the formal complaint. The respondent violated Kan. Sup. Ct. R. 211(b) by failing to file a timely written answer to the formal complaints and by failing to ever file an answer to the supplement to the formal complaint in DA11304. Accordingly, the hearing panel concludes that the respondent repeatedly violated Kan. Sup. Ct. R. 211(b).

### "American Bar Association
### Standards for Imposing Lawyer Sanctions

"47.    In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"48.    *Duty Violated.* The respondent violated her duty to her clients to provide diligent representation and adequate communication. The respondent violated her duty to the legal system to expedite litigation. The respondent violated her duty to the legal system, the legal profession, and the public to maintain her personal integrity.

"49.    *Mental State.* The respondent knowingly violated her duties.

"50. *Injury*. As a result of the respondent's misconduct, the respondent caused actual serious injury to L.B.W., L.W., D.W., and the legal system. L.B.W. suffered as a result of the respondent's misconduct both personally and financially. L.B.W. did not have an order memorializing the court's ruling which was in his favor—for more than 18 months. Further, L.B.W. was required to pay $450.00 to opposing counsel to have the order prepared.

"51. L.W. and D.W. both suffered and continue to suffer financially as they are unable to access the retirement funds. On June 14, 2013, D.W. wrote to Mr. Walczak. In the memo, D.W. described his injury as a result of the respondent's misconduct, as follows:

'Coincidentally, in June of 2012—at age 57, my employer failed to renew my employment contract. Had Ms. Soderberg filed the corrected QDRO, the economic impact of losing my primary source of income could have been greatly relieved. I simply could not then, and cannot now, afford to hire a different local attorney to draft and file a new QDRO that would be acceptable to Hawker Beechcraft that will allow me to begin to draw earned retirement fund benefits.

'Ms. Soderberg's failure to do what she was originally paid and ordered by the court to perform resulted in both financial hardship and emotional duress. . . .'

"52. Finally, the legal system suffered by the respondent's misconduct. In L.B.W.'s case, an order should have been filed in September, 2009, memorializing the court's ruling. The order was not filed until April, 2011. The court was forced to hold additional hearings as a direct result of the respondent's failure to prepare the order. In L.W. and D.W.'s case, 16 years have passed since the QDRO should have been properly prepared and filed.

"Aggravating and Mitigating Factors

"53. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"54. *Prior Disciplinary Offenses*. The respondent has been previously disciplined on two occasions. On December 17, 1997, the disciplinary administrator admonished the respondent in A6900 for having violated KRPC 1.3. On October 13, 2005, in DA9061, the disciplinary administrator informally admonished the respondent for having violated KRPC 1.3 and KRPC 8.1. [Footnote: The disciplinary administrator initially scheduled the respondent's informal admonition for September 29, 2005. The respondent failed to appear in the disciplinary administrator's office. The disciplinary (administrator) rescheduled the informal admonition and the respondent appeared at the second scheduled appointment.]

"55. *A Pattern of Misconduct*. The respondent has engaged in a pattern of misconduct. For years, the respondent failed to prepare an order memorializing the court's decision in L.B.W.'s case. The court, Mr. Lambdin, L.B.W., and op-

posing counsel repeatedly reminded the respondent to prepare the order. The respondent never prepared the order. Additionally, the respondent engaged in a pattern of misconduct by inaction in her representation of L.W. The respondent drafted the QDRO in 1997. The respondent knew in 1998 that the QDRO was deficient. The respondent never informed her client that the QDRO did not meet the requirements of the plan administrator. During the past 15 years, the respondent took no steps to correct the deficiencies in the QDRO.

"56.   *Multiple Offenses*. The respondent committed multiple rule violations. The respondent violated KRPC 1.3, KRPC 1.4, KRPC 1.16, KRPC 3.2, KRPC 3.3, KRPC 8.1, Kan. Sup. Ct. R. 207(b), and Kan. Sup. Ct. R. 211(b). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"57.   *Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process*. The disciplinary administrator and the attorneys appointed to investigate the disciplinary complaints repeatedly directed the respondent to provide written responses to the initial complaints filed by L.B.W. and D.W. Despite the repeated directions to do so, the respondent failed to provide written responses to the initial complaints. Additionally, the respondent failed to timely file written answers to the formal complaints and the supplement to the formal complaint. The respondent's repeated failure to comply with the rules which govern disciplinary proceedings, amounts to bad faith obstruction of the disciplinary proceeding.

"58.   *Vulnerability of Victim*. L.B.W., L.W., and D.W. were vulnerable to the respondent's misconduct.

"59.   *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1992. The respondent's misconduct in this case began when the respondent had six years' experience practicing law and has continued to the present. Currently, the respondent has 21 years' experience practicing law. Thus, the hearing panel concludes that the respondent has substantial experience in the practice of law and that some of the misconduct occurred after the respondent had substantial experience practicing law.

"60.   *Indifference to Making Restitution*. The respondent failed to make restitution to L.B.W. in the amount of $450 for the expenses associated with opposing counsel preparing the order. Further, the respondent failed to rectify the consequences of her misconduct by correcting the deficient QDRO.

"61.   Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"62.   *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct*. The respondent suffers from anxiety and depression. It appears that the respondent's mental health issues may have contributed to her misconduct.

"63. *The Present and Past Attitude of the Attorney as Shown by Her Cooperation During the Hearing and Her Full and Free Acknowledgment of the Transgressions.* The day before the hearing, the respondent filed answers to the formal complaints stipulating to the alleged facts and rules violations.

"64. *Remoteness of Prior Offenses.* The discipline imposed in 1997 and 2005 is remote in time but not in character to the misconduct in this case.

"65. In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.42 Suspension is generally appropriate when:
 (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
 (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

'6.11 Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.

'6.22 Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding.

'7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

*"Recommendation*

"66. The disciplinary administrator recommended that the respondent be suspended from the practice of law for an indefinite period of time. The respondent recommended that her request for probation be granted pursuant to her plan of probation.

"67. Probation is appropriate in limited circumstances. Specifically, in order for a hearing panel to recommend probation, the hearing panel must conclude:

'(i) the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least fourteen days prior to the hearing on the Formal Complaint;

'(ii) the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

'(iii) the misconduct can be corrected by probation; and

'(iv) placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.'

Kan. Sup. Ct. R. 211(g)(3).

"68. In this case, probation is not appropriate. First, the respondent failed to develop a workable, substantial, and detailed plan of probation. Next, the respondent failed to provide a copy of the proposed plan of probation to the disciplinary administrator and each member of the hearing panel at least 14 days prior to the hearing on the formal complaint. Third, the respondent failed to put the plan of probation into effect by complying with each of the terms and conditions of the probation plan. Fourth, the respondent engaged in dishonest conduct. Dishonest conduct cannot be corrected by probation. Finally, placing the respondent on probation is not in the best interests of the citizens of the State of Kansas.

"69. The respondent engaged in serious misconduct, including dishonest conduct. To date, the respondent has failed to take responsibility for her misconduct—she has failed to take any steps to correct the wrongs she committed. Further, the ABA Standards indicate that the respondent should be suspended or disbarred for the misconduct. And, while the aggravating circumstances in this case are compelling, in the hearing panel's opinion, disbarment is not warranted. However, in order to protect the public, the respondent's license to practice law must be suspended. Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be suspended from the practice of law for an indefinite period of time.

"70. Further, the hearing panel recommends that the respondent be allowed to apply for reinstatement at any time during the period of suspension. However, the hearing panel recommends at the reinstatement hearing, under Kan. Sup. Ct. R. 219, the respondent be required to present clear and convincing evidence that she has made full restitution, she has taken steps to correct the deficient QDRO, and she has received adequate mental health treatment to render her capable of engaging in the active practice of law.

"71. Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, the discipline to be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2013 Kan. Ct. R. Annot. 356). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *In re Lober*, 288

Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The respondent was given adequate notice of the formal complaints, to which she untimely filed an answer; she filed no exceptions to the hearing panel's final hearing report. With no exceptions before us, the panel's findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2013 Kan. Ct. R. Annot. 375). Furthermore, the evidence before the hearing panel establishes the charged misconduct in violation of KRPC 1.3 (2013 Kan. Ct. R. Annot. 464) (diligence); 1.4(a) (2013 Kan. Ct. R. Annot. 484) (communication); 1.16(d) (2013 Kan. Ct. R. Annot. 569) (termination of representation); 3.2 (2013 Kan. Ct. R. Annot. 587) (expediting litigation); 3.3(a)(1) (2013 Kan. Ct. R. Annot. 594) (candor toward tribunal); 8.1(b) (2013 Kan. Ct. R. Annot. 646) (failure to respond to lawful demand for information from disciplinary authority); Kansas Supreme Court Rules 207(b) (2013 Kan. Ct. R. Annot. 336) (failure to cooperate in disciplinary investigation); and 211(b) (2013 Kan. Ct. R. Annot. 356) (failure to file answer in disciplinary proceeding) by clear and convincing evidence and supports the panel's conclusions of law. We therefore adopt the panel's findings and conclusions.

The only remaining issue before us is the appropriate discipline for respondent's violations. At the hearing before this court, at which the respondent appeared, the office of the Disciplinary Administrator recommended that the respondent be suspended indefinitely. The respondent recommended probation.

The hearing panel recommended that the respondent be indefinitely suspended and that she be allowed to apply for reinstatement at any time during the period of suspension pursuant to Kansas Supreme Court Rule 219 (2013 Kan. Ct. R. Annot. 407). The hearing panel recommended at the reinstatement hearing the respondent be required to present clear and convincing evidence that she has (1) made full restitution, (2) taken steps to correct the deficient QDRO, and (3) received adequate mental health treatment to render her capable of engaging in the active practice of law.

We hold that respondent should be suspended from the practice of law for 18 months effective as of the date of this opinion and that she be subject to a Rule 219 reinstatement hearing before her suspension may be lifted. In respondent's motion for reinstatement, she is required to address whether a plan of supervision is needed. At the reinstatement hearing, the respondent is required to present clear and convincing evidence that she has made full restitution, has taken steps to correct the deficient QDRO, and has received adequate mental health treatment to render her capable of engaging in the active practice of law.

## CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Ann Gottberg Soderberg be suspended from the practice of law in the state of Kansas for a period of 18 months, in accordance with Supreme Court Rule 203(a)(2) (2013 Kan. Ct. R. Annot. 300).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2013 Kan. Ct. R. Annot. 406) and Rule 219. More specifically, her motion for reinstatement must address whether a plan of supervision is needed. At the reinstatement hearing, she is required to present clear and convincing evidence that she has made full restitution, has taken steps to correct the deficient QDRO, and has received adequate mental health treatment to render her capable of engaging in the active practice of law.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.